**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JUSTIN C. BRASWELL,** | § | |
| | § | |
| **V.** | § | **A-12-CV-1111-LY** |
| | § | **(A-10-CR-692-LY)** |
| **UNITED STATES OF AMERICA.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

**TO:   THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court is Justin Christopher Braswell's Motion to Vacate, Set Aside or Correct

Sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 78); the Government's Response to Movant's

Motion (Dkt. No. 86); and Braswell's Reply (Dkt. No. 87).   Braswell's Brief in Support of his

Motion (Dkt. No. 79), his Affidavit in Support of his Motion (Dkt. No. 80), and his Motion to

Supplement his Brief (Dkt. No. 88) were also considered when rendering this report and

recommendation.   The undersigned submits this Report and Recommendation to the United States

District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of

the United States District Court for the Western District of Texas, Local Rules for the Assignment

of Duties to United States Magistrate Judges.

**I.   GENERAL BACKGROUND**

On November 16, 2010, Braswell was charged in a one-count indictment with possession of

child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).   Braswell pleaded guilty to the

indictment on August 15, 2011, pursuant to a written plea agreement.   *See* Dkt. No. 61.   Pursuant

to Federal Rule of Criminal Procedure 11(c)(1)(C), the government and Braswell agreed that a

sentence of sixty (60) months and a term of supervised release of five years would be an appropriate

sentence.  The agreement was accepted, and Braswell was sentenced November 3, 2011.  On November 14, 2011, Braswell filed a notice of appeal to the Fifth Circuit, alleging violations of his constitutional rights on the grounds of prosecutorial misconduct and ineffective assistance of counsel.  *See* Dkt. No. 71.  Two weeks later, Braswell moved to withdraw his notice of appeal, Dkt. No. 72, and on December 12, 2011, his appeal was dismissed by the Fifth Circuit.  *See* Dkt. No. 74. Braswell filed this motion on December 3, 2012.

## II.  CLAIMS

Braswell asserts several claims in his motion.  First, he alleges that his Fifth Amendment right against self-incrimination was violated on June 11, 2010, during the execution of a search warrant at his residence.  Braswell contends that he had no choice but to submit to questioning during the search, and maintains that information gained during the course of the interview was later used against him.

Second, Braswell argues that he was denied effective assistance of counsel because his attorney, David Peterson (1) failed to investigate his case; (2) failed to interview and subpoena witnesses; (3) gave him poor advice regarding initial plea offers and then coerced him into signing an unfavorable plea agreement; (4) denied him the right to appeal; and (5) exhibited bias and discriminatory behavior towards him.

## II.  STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which Braswell may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is

otherwise subject to collateral attack.  28 U.S.C. § 2255.  The nature of a collateral challenge under § 2255 is extremely limited:  "A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If the error is not of constitutional or jurisdictional magnitude, then Braswell must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice."  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).  As the Supreme Court has explained, the reason for these rules is that "a collateral challenge may not do service for an appeal."  *United States v. Frady*, 456 U.S. 152, 165 (1982).

It is well-settled law that when, as here, a defendant pleads guilty, he waives all non-jurisdictional defects in the proceedings against him, so long as the plea was knowing and voluntary.  *United States v. Smallwood*, 920 F.2d 1231, 1240 (5th Cir.1991); *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000).  This includes waiving all claims of ineffective assistance of counsel, except to the extent that any alleged ineffectiveness relates to the voluntariness of the defendant's plea.  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *United States v. Dyer*, 136 F.3d 417, 423 n.10 (5th Cir. 1998).  The waiver also reaches to any claims of governmental misconduct during the investigation, *United States v. Owens*, 996 F.2d 59, 60 (5th Cir. 1993), as well as objections to searches and seizures that violate the Fourth Amendment or *Miranda* rights, *United States v. Wise*, 179 F.3d 184, 186 (5th Cir.1999); *Franklin v. United States*, 589 F.2d 192, 194–95 (5th Cir.1979).  Thus, if Braswell's guilty plea here was made voluntarily, he has waived many of the arguments he

is attempting to raise in his motion to vacate.  The Court therefore begins its analysis by analyzing Braswell's plea, and the arguments he raises regarding its voluntariness.

Finally, because Braswell's voluntariness claim hinges on assertions that his attorney's representation was ineffective in relation to the guilty plea, the Court will briefly review general principles regarding a defendant's constitutional right to the effective assistance of counsel, as detailed in the seminal decision *Strickland v. Washington*, 466 U.S. 668 (1984).  Ineffective assistance of counsel claims are properly brought as § 2255 motions.  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).  In order to succeed on an ineffective assistance of counsel claim, a petitioner must prove that (1) his "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense."  *Strickland,* 466 U.S. at 687.  Both prongs must be satisfied under the conjunctive *Strickland* test.  *Coleman v. Thaler,* 716 F.3d 895, 903 (5th Cir. 2013).  In determining whether performance was deficient, counsel's actions are judged by a "reasonableness" standard, founded on prevailing professional norms.  *Strickland*, 466 U.S. at 688.  Courts are highly deferential to counsel, indulging a "strong presumption" that "conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir.), *cert. denied*, 528 U.S. 947 (1999).  Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Finally, when a guilty plea is challenged, conclusory allegations of ineffective assistance of counsel fail to refute testimony given under oath.  *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000).

### III.  ANALYSIS

**A.      The Voluntariness of Braswell's Plea**

In describing what a voluntary plea of guilty entails, the Supreme Court has stated:

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes).

*Brady v. United States*, 397 U.S. 742, 755, (1970).  In judging the voluntariness of a plea, the defendant's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73 (1977); *see also United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).

The undersigned conducted the guilty plea proceedings in this case.  After placing Braswell under oath, the Court advised him that he should not fail to raise any questions during the proceedings, and that if he did not understand something he should speak up, and also advised Braswell that he was free to speak to his attorney during the proceedings.  Dkt. No. 84 at 4 [hereinafter Transcript].  Braswell confirmed that he understood this.  *Id.*  When asked, Braswell confirmed that he had sufficient time to meet with his attorney prior to the plea, that he had discussed everything he believed he needed to discuss with his counsel, and that he was satisfied with his attorney's representation. *Id.* at 7-8.  The Assistant United States Attorney then summarized the plea agreement in Braswell's case, *id.* at 10-12, and Braswell stated under oath that he had read the plea agreement, had met with his attorney to discuss it, that he understood it, and agreed to it, *id.* at 12-13. The Court expressly advised Braswell of the waiver of appeal provision in the plea agreement, as

well as the impact of the fact that the agreement called for a specific sentence to be imposed, as

provided for in Rule 11(c)(1)(C). *Id.* at 22-24.  Finally, after the charge was read and Braswell made

his plea of guilty, the undersigned specifically inquired whether his plea was freely and voluntarily

made:

> THE COURT: Now, in each of your[1] cases are you each making your pleas of guilty freely and voluntarily?
>
> DEFENDANT BRASWELL: Yes.
>
> THE COURT: Are you pleading guilty because you are guilty and for no other reason?
>
> DEFENDANT BRASWELL: Yes.
>
> THE COURT: Has anyone threatened you or forced you in any way to make you plead guilty?
>
> DEFENDANT BRASWELL: No.
>
> THE COURT: Has anyone promised you anything other than what's in your plea agreement that's caused you to plead guilty?
>
> DEFENDANT BRASWELL: No.
>
> THE COURT: Again, other than what's in your plea agreement, has anyone made any promise or prediction to you about what your sentence would be?
>
> DEFENDANT BRASWELL: No.

*Id.* at 39–40.  Given all of these sworn statements, Braswell has an uphill battle in demonstrating

that his plea was involuntary.

On January 10, 2013, the United States filed a motion requesting that Peterson, who is an

Assistant Federal Public Defender and was appointed to represent Braswell, be permitted to disclose

---

[1]Braswell's plea was taken along with other defendants, and the Court only includes Braswell's answers in this excerpt from the re-arraignment transcript.

otherwise attorney-client privileged material to respond to Braswell's claims.  That motion was granted on January 14, 2013, and on February 12, 2013, the government filed its response, which included a very detailed affidavit, filling sixteen single-spaced pages, from Peterson, as well as a copy of a letter from Braswell to Peterson, written after Braswell rejected the government's second plea offer.  Dkt. No. 86, Exh. 1.  The affidavit thoroughly explains the decisions Peterson made in defending Braswell, as well as the advice he gave Braswell.

Braswell makes three discrete arguments challenging the voluntariness of his plea.  First, he contends that Peterson gave him incorrect advice regarding his sentencing exposure, which induced Braswell to plead guilty.  Second, Braswell contends that Peterson gave him faulty advice when he recommended that Braswell reject the government's first two plea offers.  And third, and somewhat related to the first argument, Braswell contends that Peterson coerced him into pleading guilty.

### 1.    Calculation of Braswell's Potential Sentence

The Court begins its analysis with Braswell's claim that Peterson erroneously advised him that his potential sentence exposure was thirteen to fifteen years, despite the fact that the charged offense—a violation of  18 U.S.C. § 2252(b)(2)—provided for a maximum sentence of only ten years.[2]  Peterson agrees that he advised Braswell that he believed Braswell was exposed to as much as 151-188 months (12½ to 15½ years) of imprisonment if Braswell chose to go to trial and was convicted.  He explains in detail how he reached this conclusion, which was based on both the prosecutor's statements of what he believed the Guidelines called for, as well as Peterson's own

---

[2] At the time Braswell was sentenced, the maximum sentence under 18 U.S.C. § 2252(b)(2) was ten years.  However, the Child Protection Act of 2012 has now amended the statute to provide a maximum sentence of twenty years if any visual depictions involved in the offense included a minor who had not attained twelve years of age.  Child Protection Act of 2012, Pub. L. No. 112–206, 126 Stat. 1490.

independent review of the possible Guideline calculation. Dkt. No. 86-1 at 7. He explains that the only real question with the Guideline calculation was whether a 5-level enhancement under § 2G2.2(b)(5) would be appropriate for Braswell having engaged in a "pattern of activity involving sexual exploitation of a minor."[3] The government told Peterson it intended to seek that enhancement based on claims made by Braswell's daughter that he had repeatedly assaulted her. Indeed, state sexual assault charges based on these claims were pending against Braswell at the time. Peterson explained that although there were inconsistencies in the statements of Braswell's daughter, he nevertheless believed there was a "significant chance" that the Court would apply that enhancement to Braswell. *Id.* Without the enhancement, Braswell's offense level was a 29, and with it, the offense level was 34. Assuming he went to trial and was convicted, there would be no adjustment for acceptance of responsibility. Braswell was in criminal history category I, so with an offense level of 29 his Guideline range would be 87-108 months, and with a level of 34, it would be 151-188 months.[4] Peterson further explains that although the maximum sentence under the charged offense was 120 months of imprisonment, he believed that there was a serious risk that, if Braswell went to trial, the government would re-indict Braswell and charge him with receipt of child pornography, which increased the maximum sentence to 20 years of imprisonment, and added a mandatory minimum sentence of five years. *Id.* at 12. There is nothing incorrect in Peterson's assessment, and Braswell is unable to offer any argument to the contrary. Thus, to the extent that Peterson informed

---

[3]There was little doubt that an enhancement for having images of children under 12, for material portraying sadistic conduct, for use of a computer, or for having 150-300 images, were appropriate.

[4]With a plea of guilty, and the downward 3-level adjustment for acceptance of responsibility, these ranges would be 63-78 months, and 108-135 months, respectively.

Braswell that his potential exposure if he went to trial and lost was "thirteen to fifteen years," this was not ineffective assistance by Peterson, but rather was correct advice.

Braswell contends that further evidence that Peterson was ineffective in relation to the guilty plea is the fact that his plea agreement mandated a 60-month sentence, when his Guideline range ultimately was calculated to be only 63-78 months. Braswell views this as only a 3-month benefit. He suggests that if his exposure was only 63-78 months, Peterson's advice to plead guilty was below the standard of care. This argument displays a lack of comprehension of the U.S. Sentencing Guidelines and of what Braswell gained from his guilty plea. First, even if the government had not re-indicted Braswell before trial and added a "receipt" charge (though it mostly likely would have), there is little question that had Braswell been convicted after a trial, the government would have urged that the Guideline calculation should include the 5-level upward adjustment under § 2G2.2(b)(5), and Peterson's assessment was that there was a "significant chance" that the Court would find that adjustment applicable. Second, regardless of whether the adjustment was applied, and even if the charges stayed the same at trial, after a trial Braswell would not receive the 3-level downward adjustment for acceptance of responsibility. Thus, even under Braswell's prediction of what his post-conviction situation might have been, his offense level would have been a 29, and his Guideline range would have been 87-108 months, or 27-48 months longer than the 60-month deal Peterson obtained for him. And under the more likely scenario, the offense level would have been 34, the statutory maximum 20 years, and his Guidelines would have been 151-188 months. On top of all of this, without a plea agreement, Braswell was also exposed to the state child molestation charges, for which Peterson had learned the prosecutors were seeking a sentence of 40-50 years of imprisonment if they went to trial, or 15-25 years with a plea. In sum, the final plea agreement

9

Peterson obtained is most definitely not evidence that Peterson was ineffective in representing Braswell, as it provided Braswell with substantial benefits compared to what was possible if he had chosen to go to trial.

### 2.     The Government's First Two Offers

Braswell also contends that Peterson improperly advised him to reject the government's first and second plea offers. Dkt. No. 79 at 16. In his affidavit, Peterson states that he in fact did advise Braswell to reject the government's first plea agreement, but strongly recommended Braswell accept the government's second plea offer. Dkt. No. 86-1 at 7–9. Peterson states that his advice to reject the first plea offer stemmed from the fact that the offer did not include an agreement that the state authorities would dismiss the pending child molestation charges. In his discussions with Braswell's state court attorney, Peterson was worried that a conviction for possession of child pornography would be powerful evidence against Braswell in the state court case, and, as noted above, the prosecutors in that case were going to be asking for a sentence of up to 50 years in prison. *Id.* at 7–8. Based on this, Peterson advised Braswell to reject the government's first plea offer. *Id.* at 8. Braswell agreed, and told Peterson that he had reached the same decision independently. *Id.* There is nothing in the record to suggest that Peterson's advice fell below the standard of care. If anything, it appears to have been sound.

Concerning the government's second offer, Peterson recounts that in March 2011, after a decision from the Fifth Circuit that might have assisted Braswell's defense, the government made an even more favorable offer to Braswell. That offer lowered the amount of time Braswell would be in custody to 24 months and, more importantly, would have resulted in the dismissal of his pending state charges. *Id.* at 8–9. Peterson states that he strongly advised Braswell to accept the

government's second plea offer, and details his extensive discussions, and multiple jail visits, with Braswell after Braswell expressed his desire not to accept the offer. *Id.* at 8. Though Braswell contends that Peterson advised him to reject this plea offer, he offers nothing but conclusory statements to support this claim, while Peterson provides a detailed explanation of his many meetings with Braswell about the offer, including recounting the notes he made of the visits. Further, Braswell's own written words belie this claim. Peterson attaches to his affidavit a letter Braswell sent Peterson following his rejection of the offer. Dkt. No. 86-1 at 18-19. In the letter, Braswell expresses his gratitude to Peterson for his advice, but informs Peterson that he wished to take his chances with the motion to suppress. Braswell refers to the deal as "incredibly tempting," and states that while he has had "several bouts of buyer's remorse and [has] second-guessed [his] decision several times," he is "convinced that [he] made the right decision to fight and refuse the deal" after re-reading the motion to suppress. *Id.* at 18. He further writes:

> Please know that I really respect your advice and your position concerning the deal the government offered. Like I told you Friday, my decision to fight has absolutely nothing to do with me entertaining in any way that your advice is unworthy of note or a reflection of my opinion of your intelligence. In fact, I think my decision illustrates quite the contrary. I understand why you advised me the way you did. Undoubtedly, had I been in your shoes, I would have advised someone like me the same way in an effort to preserve my conscience in the event of the worst case scenario.

*Id.* at 1–2. Braswell unequivocally states that he "know[s] the risks" and "fully understand[s] what is at stake" by rejecting the second plea offer and proceeding with the motion to suppress. *Id.* at 2. Other than the wholly conclusory allegations in the motion, there is nothing in the record to suggest that Peterson advised Braswell to reject the second plea offer. Instead, it is plain that Braswell rejected the government's second plea deal *against* Peterson's advice, and now regrets that. Once

11

again, this is not ineffective assistance of counsel, but rather is a frivolous (if not outright dishonest) argument.

### 3.    Alleged Coercion

Finally, Braswell makes a claim that Peterson coerced him in other ways into accepting the 60-month plea deal. Dkt. No. 79 at 15–20. Braswell's § 2255 motion presents very little, if any, evidence to support this claim. In his affidavit, Braswell argues that Peterson used a variety of tactics to coerce him into accepting the government's third plea deal. Dkt. No. 80 at 6–12. Braswell claims that Peterson (1) played upon his fears of having prostate cancer; (2) repeatedly discussed the futility of continuing to fight the charges against him or waiting for the outcome of the suppression hearing; and (3) erroneously told him that he would be subject to a much longer sentence if he did not accept the plea agreement and consequently, would likely not be able to see his parents outside of prison. *Id.* Although Peterson acknowledges that he told Braswell that he was likely to face a longer prison sentence if he did not accept the government's third plea offer, Peterson denies many of the other statements Braswell attributes to him. Peterson Affidavit at 13–15. Moreover, the record shows that at Braswell's plea hearing, he unequivocally stated under oath that no one "threatened [him] or forced [him] in any way to make [him] plead guilty." Transcript at 39. Braswell further stated that he was making his plea freely and voluntarily and that he was pleading guilty because he was guilty and for no other reason. *Id.* When asked whether Braswell was satisfied with Peterson's representation, Braswell answered affirmatively. *Id.* at 8. When examining ineffective assistance of counsel claims regarding the validity of guilty pleas, courts entertain a strong presumption in favor of effective assistance and against refutation of testimony given at a plea hearing while under oath. *Montoya*, 226 F.3d at 406. Given Braswell's representations during his

plea hearing, and Peterson's detailed refutation of Braswell's claims, Braswell has failed to demonstrate that the Court should disregard the sworn statements at his plea hearing denying any coercion. Consequently, his ineffective assistance of counsel claim on this point cannot succeed.

In short, the record reflects that Peterson provided highly effective assistance of counsel to Braswell in connection with Braswell's guilty plea, and that Braswell's plea was voluntarily and intelligently made. As a result, Braswell's plea of guilty waived all non-jurisdictional defects in the proceedings against him, including claims of the violation of his Fifth Amendment rights, as well as assertions that his attorney was ineffective outside of the guilty plea negotiations or proceedings. *Supra* at 3-4. This means that Braswell's claims that Peterson failed to properly investigate his case, interview witnesses, or seek the exclusion of statements made on the day of his arrest, are all waived, and Braswell is not entitled to any relief based on those claims.[5]

## B.      Alleged Denial of Right to Appeal

Braswell also asserts that Peterson denied Braswell his right to appeal through trickery and coercion. Dkt. No. 78 at 9. Following his judgment and commitment on November 3, 2011, Braswell filed a notice of appeal on November 14, 2011. *See* Dkt. No. 71. On November 28, 2011, Braswell submitted a motion requesting to withdraw his appeal, which was granted by Judge Lee Yeakel on November 30, 2011. *See* Dkt. Nos. 72–73. Braswell argues that Peterson used scare tactics involving Braswell's illness to coerce him into withdrawing his appeal. Dkt. No. 78 at 10. Braswell also asserts that Peterson lied to him about being his attorney and contends that Peterson failed to discuss Braswell's right to appeal with him. *See* Dkt. No. 79 at 21, 23. In response, the

---

[5]And even if the Court had reviewed the merits of those claims, Peterson's affidavit resoundingly refuted them. Peterson plainly investigated the case thoroughly, and his office and investigators spent hundreds of hours doing so. There is no merit to any of Braswell's assertions.

government points to Braswell's motion to withdraw his notice of appeal, which contained a statement signed by Braswell indicating that he understood that it was his decision whether to continue with his appeal and that he was voluntarily and knowingly withdrawing his appeal.  Dkt. No. 86 at 9–10; Dkt. No. 72, Exh. 1.  The government contends that Braswell was not denied his right to appeal, but that he voluntarily withdrew his notice of appeal.  Dkt. No. 86 at 10.

Once again, Braswell's claims are wholly without any basis in fact, and are contrary to sworn declarations that he made at the time of the events in question.  As noted earlier, as a result of the plea negotiations, the Harris County authorities had agreed that if Judge Yeakel accepted Braswell's plea agreement and sentenced him in accordance with that agreement, it would not further prosecute him on the child molestation charges pending there.  Transcript at 13.  Peterson recounts that when he became aware that Braswell had filed a pro se notice of appeal, he was concerned that Braswell was unaware of the fact that an appeal would stay entry of a final judgment, and would therefore relieve Harris County prosecutors from any obligation to dismiss the charges there.  Dkt. No. 86-1 at 11.  At the same time, he stated that he was concerned about how to explain that to Braswell, given that Braswell had stated that one of the bases for his appeal was that Peterson had rendered ineffective assistance to him, thereby creating a potential conflict of interest in Peterson's continued representation.  Further complicating things is that Braswell was at this time in Harris County's custody, having been returned there after his sentencing hearing, as those charges remained pending, and he had come into federal custody pursuant to a writ served on Harris County.  *See* Dkt. No. 6.  Ultimately, after consulting with his direct supervisor, and the Public Defender himself, Peterson traveled to Houston and met with Braswell.

14

Upon meeting with Braswell, Peterson explained his interpretation of Braswell's plea agreement and the effect his appeal could have on his state court charges. Dkt. No. 86-1 at 11. Peterson further advised Braswell that he had the right to appeal his federal case, but that Peterson could not comment on the merits of Braswell's ineffective assistance of counsel claims. *Id.* Peterson also emphasized that the decision about whether to continue with the appeal was Braswell's alone and that he would assist him in obtaining a new lawyer for the appeal if he wished. *Id.* Peterson states that after this,

> Mr. Braswell told me that he understood all of this. Mr. Braswell apologized for filing the notice of appeal, saying that he had been told to do so by someone in custody, and that he was in particular sorry for alleging ineffective assistance. He told me he wished to dismiss his notice of appeal, and he signed the form I had written stated that he wished to do so, after we reviewed it.

*Id.* at 12. The statement signed by Braswell contained in the Motion to Withdraw Notice of Appeal, notes that Braswell (1) was advised of the risks and benefits of continuing his appeal; (2) understood that the decision regarding whether to continue with his appeal was his alone and that no one could force or coerce him into withdrawing his appeal; and (3) voluntarily, freely, and knowingly stated his wish to withdraw his appeal. Dkt. No. 72, Exh. 1. Peterson signed a statement in the same document, stating that he advised Braswell that he may continue his appeal and that no one can coerce him into withdrawing his appeal. *Id.* These statements are unequivocal and belie Braswell's current contentions that he was tricked and coerced into withdrawing his appeal. Given the statements Braswell made at the time he withdrew his appeal, and further considering the interaction between Braswell's appeal and his state criminal charges, Peterson's advice regarding the appeal was sound and carefully framed. There is no support in the record for Braswell's claim that Peterson coerced him into dismissing the appeal.

C.     **Alleged Bias and Discrimination**

Braswell's final ineffective assistance claim alleges that Peterson was biased and discriminated against Braswell due to the nature of the charge to which he pled guilty.  Dkt. No. 78 at 10.   In this claim, Braswell essentially reiterates all of his previous contentions, arguing that Peterson (1) lied to him about his potential sentence exposure; (2) failed to investigate and interview relevant witnesses; (3) wrongfully advised him to reject two government plea deals; (4) advised him to accept a plea agreement which provided only marginally less prison time than his guideline range; and (5) coerced him into withdrawing his appeal.  *Id.*   In other documents submitted with this § 2255 motion, Braswell charges that Peterson had no loyalty to Braswell as his client and failed as his "zealous advocate."  *See* Dkt. No. 79 at 26; Dkt. No. 80 at 15.   The government claims that Braswell's bias and discrimination claim is without merit and that he has presented nothing to substantiate these allegations.  Dkt. No. 86 at 10–12.

Practically all of the allegations cited by Braswell as evidence of Peterson's bias and discrimination have already been discussed by the Court.  Braswell has presented nothing with regard to his bias and discrimination claim that would alter the Court's conclusion that Peterson did not provide ineffective assistance of counsel in his representation of Braswell.  The basis for Braswell's claim that Peterson was biased against him appears to be his conclusory allegation that "any charge involving children is a sensitive issue" and that "[t]hese types of cases offend most people, just like defense counsel in this case."  Dkt. No. 79 at 25.  Aside from this statement, Braswell has presented nothing else to substantiate his charge that Peterson was biased and discriminated against him.  And as with Braswell's other claims, the record contradicts Braswell's current assertions.  During the plea hearing, the undersigned asked Braswell whether he was satisfied

with his attorney's representation.  Transcript at 8.  Braswell responded that he was.  *Id.*  It is plain

from Peterson's affidavit that he was in no way biased against Braswell, and indeed was distressed

that he could not convince him to accept the two-year deal the government offered him in March

2011.  Peterson's own words sum up the situation well:

> I felt and continue to feel very good and proud of my zealous representation of Mr.
> Braswell.  I felt that, particularly given the nature of the charges, as well as the
> additional allegations in his state case and made by several women against him, it
> was particularly important to provide zealous representation to a man who had the
> full force of state and federal prosecutorial authorities against him.

Dkt. No. 86-1 at 13.  As noted at the outset of this Report and Recommendation, when the validity

of a guilty plea is at issue, conclusory allegations of ineffective assistance of counsel fail to refute

testimony given under oath.  *Montoya*, 226 F.3d at 406.  Here, Braswell has not presented the Court

with any evidence that would refute the sworn testimony he provided during his plea hearing nor is

there anything to suggest Peterson's alleged bias or discrimination.   Consequently, Braswell's

ineffective assistance of counsel claim based on Peterson's bias and discrimination is without merit.

**D.**      ***United States v. Reed* and the Request for an Evidentiary Hearing**

Finally, in a supplemental filing, Braswell requests that the Court consider a recent Fifth

Circuit decision, *United States v. Reed*, 719 F.3d 369 (5th Cir. 2013), where the petitioner was

granted an evidentiary hearing to further explore his allegations of ineffective assistance of counsel.

Dkt. No. 88.  Braswell contends that the situation in his case is very similar to that in *Reed*.  *Id.*  In

*Reed*, the petitioner alleged that his counsel had erroneously informed him that he would receive a

sentence of thirty-six months if he were to plead guilty.  *Id.* at 372.  Based on this advice, the

petitioner proceeded to trial, where he was convicted by a jury and sentenced to forty-eight months

imprisonment.  *Id.* at 371.  The petitioner argued that he would have pleaded guilty had his counsel

provided an accurate picture of his sentencing exposure. *Id.* at 375. Ultimately, the *Reed* court concluded that an evidentiary hearing should have been granted because the petitioner's "affidavit was sufficient to prove his allegation and was not speculative, conclusory, plainly false, or contradicted by the record . . . ." *Id.* at 374.

A defendant must present "independent indicia of the likely merit of [his] allegations" to be entitled to an evidentiary hearing on a § 2255 motion. *Reed*, 719 F.3d at 373 (citing *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)). A petitioner who presents only conclusory or speculative allegations, without evidentiary support, is not entitled to an evidentiary hearing. *Id.* at 373–74. Should a petitioner's allegations contradict previous sworn testimony, the Fifth Circuit has required more than just contradiction to obtain an evidentiary hearing, such as "specific factual allegations supported by the affidavit of a reliable third person." *Id.* (citing *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)). As is apparent from what has already been said, Braswell has completely failed to meet this standard. Contrary to Braswell's assertion, the Fifth Circuit in *Reed* did not hold that *all* unsupported claims of ineffectiveness of counsel should warrant an evidentiary hearing. Dkt. No. 88 at 3. Rather, *Reed* specifically took into consideration its determination that the petitioner's affidavit was not "speculative, *conclusory*, plainly false, or *contradicted by the record* . . . ." *Reed*, 719 F.3d at 374 (emphasis added). Furthermore, the government's response in *Reed* did not include an affidavit from Reed's counsel nor did it challenge the petitioner's factual assertions. *Id.* at 372.

Here, Braswell's counsel submitted an extensive affidavit detailing his representation of Braswell, and so this case is unlike *Reed*, where the Fifth Circuit was unable to evaluate defense counsel's advice because no evidence was provided to explain the sentencing prediction defense

18

counsel provided there.  *Reed*, 719 F.3d at 374.  In this case, Peterson has explained the basis for his prediction that Braswell's trial sentencing exposure was approximately thirteen to fifteen years, and the Court has concluded that the advice was correct.  *Reed* does not support Braswell's claim that he is entitled to a hearing on his Motion to Vacate, and the Court denies Braswell's request for such a hearing.

## IV.  RECOMMENDATION

In accordance with the preceding discussion, the undersigned **RECOMMENDS** that the District Court **GRANT** Braswell's Motion to Supplement his Brief in Support of his § 2255 Motion (Dkt. No. 88) and **DENY** Braswell's Motion to Vacate, Set Aside or Correct Sentence (Dkt. No. 78).

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Pursuant to Rule 11 of the Federal Rules Governing § 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may be issued only if Braswell has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000).  In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  A COA should be issues when the petitioner shows that jurists of reason whether

the petition states a valid denial of a constitutional right and whether the district court erred in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Braswell's § 2255 motion on substantive or procedural grounds, nor find that the issues presented deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, the Court recommends that a certificate of appealability not be issued.

## VI. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of February, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE